UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STANLEY L. WARD, | ) |
|       Petitioner, | ) |
| v. | )    1:14-cv-00024-JAW |
| STATE OF MAINE, | ) |
|       Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 MOTION**

Stanley L. Ward, who is currently in state custody, filed a habeas petition, pursuant to 28 U.S.C. § 2254, collaterally challenging his state court conviction and sentence for robbery, kidnapping, and attempted murder. The state court imposed concurrent sentences on the kidnapping and attempted murder counts and a consecutive sentence on the robbery count, resulting in an aggregate term of imprisonment of fifty years, with all but forty-five years suspended. The Law Court affirmed the sentence on direct appeal. *State v. Ward*, 2011 ME 74, 21 A.3d 1033. The state court denied his post-conviction petition following an evidentiary hearing, and the Law Court declined a discretionary appeal.

In the pending section 2254 petition, Petitioner reasserts the sentencing-related arguments made in his direct appeal and the ineffective assistance claims made in his post-conviction proceeding. In addition, he raises a claim that was not presented in the state court. As part of its response to the petition, the State moved for dismissal.

After a review of Petitioner's motion and the State's request for dismissal, as explained below, the recommendation is that the Court grant the State's request, deny relief, and dismiss the petition.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of the crime, which took place in November 2009, are derived from the Law Court's opinion in Petitioner's direct appeal. Petitioner had financial problems. He formulated a plan to rob, kidnap, and murder someone who, like the victim, was a client of his father's lawn care business. *Id.* ¶ 2. When Petitioner found that the intended victim had left town for Thanksgiving, he changed his target to the victim, who was a 72-year old widow living alone at her home in Belfast. *Id.*

Petitioner planned the attack for two days and arrived at the victim's home at 4:30 p.m. on the day of the crime, carrying a hunting knife and some duct tape. *Id.* ¶ 3. He obtained entry to the home on false pretenses, offering to do yard work for money. Petitioner assaulted her and demanded money. *Id.* ¶ 4. The victim gave Petitioner the money that she could find, and then Petitioner forced her to write him a check for $300. *Id.* During the assault in the victim's home, Petitioner injured her and bound her hands with duct tape. *Id.*

Petitioner then kidnapped the victim in her car and drove her to a small, abandoned trailer in a remote location. *Id.* ¶¶ 5-6. He forced her inside the trailer, slammed her to her knees, and displayed his knife while she begged for her life. *Id* ¶ 6. The victim said, "Please don't hurt me." *Id.* Petitioner laughed and said "Why not?" He cut her throat and then asked, "Are you bleeding yet?" "Are you bleeding good yet?" *Id.* The victim lost consciousness for brief periods. *Id.* Petitioner left for a short time and returned, asking "Are you dead yet?" He cut her throat a second time. *Id.* ¶ 7. Petitioner left and returned, cut her throat a third time, struck her repeatedly in the

head with the butt end of his knife, and stabbed her in the neck and shoulder. *Id*. The victim heard Petitioner say, "Well, you're dead now." *Id*.

Petitioner disposed of the knife, drove into Belfast, returned the victim's car to her driveway, got his truck, deposited the $300 check, and bought "Twisted Tea" and cigarettes. *Id.* ¶ 8. He then drove back to the trailer to determine if the victim was dead, but he turned around without entering the trailer after concluding that the victim must be deceased. *Id.* Unbeknownst to Petitioner, the victim had crawled out of the trailer and down the road. *Id.* ¶ 9. She rolled into a ditch filled with cold water when she saw the truck approaching. *Id.* Petitioner drove to his girlfriend's house, where he consumed alcohol and smoked marijuana with her and her father. *Id.* ¶ 8. He then went home and went to bed. *Id.* The victim, though severely injured, survived the attack and identified Petitioner. *Id.* ¶ 11. Petitioner was arrested the next morning. *Id.* He waived his *Miranda* rights, admitted the crime, and agreed to reenact it in a video for law enforcement. *Id.*

In November 2009, Petitioner was charged by criminal complaint in the Maine Superior Court with one count of robbery, 17-A M.R.S. § 651(1)(C); one count of kidnapping, 17-A M.R.S. § 301(1)(A)(3); and one count of attempted murder, 17-A M.R.S. § 17-A M.R.S. §152(1)(A). *State v. Ward*, No. BELSC-CR-2009-00356 (Docket Sheet.) In January 2010, Petitioner waived indictment, and his motion for a psychiatric examination was granted. In March 2010, the psychiatric report was filed, and in April 2010, the state court conducted a hearing pursuant to M. R. Crim. P. 11, at which hearing Petitioner changed his pleas from not guilty to open pleas of guilty on all counts. The court accepted the pleas.[1]

---

[1] Counsel testified at the post-conviction hearing that because this was a Class A charge and Petitioner had no prior criminal history, counsel thought that pursuing a mental health defense would be helpful, and he arranged for a mental health examination. However, the results were "extremely detrimental" to Petitioner, and on that basis counsel decided not to raise a mental health defense. Counsel successfully argued that the psychiatric report should be kept sealed. (Post-conviction Tr. at 76-78.)

In July 2010, the court sentenced Petitioner on the robbery to a term of 20 years of imprisonment, with all but 15 years suspended, followed by four years of probation, and restitution of $10,226; on the kidnapping to 20 years of imprisonment; and on the attempted murder to 30 years of imprisonment. The sentence for robbery was to be served consecutively to the sentence for attempted murder. (Docket Sheet; Amended Judgment.)

Petitioner directly appealed from the sentence, and he filed an application to allow a discretionary appeal of the sentence, pursuant to 15 M.R.S. § 2151 and M. R. App. P. 20. *Ward*, 2011 ME 74, ¶ 13.[2] The Sentence Review Panel denied the discretionary appeal. *Id.* In his direct appeal, Petitioner challenged the sentence on the following grounds:

> that (1) the length of the sentences, both individually and collectively, violated his constitutional protection against cruel or unusual punishment; (2) when the court found the facts necessary to impose consecutive sentences, resulting in a longer period of incarceration than the statutory maximum for any of his convictions individually, it violated his constitutional right to trial by jury; and (3) the court erred in its application of 17–A M.R.S. § 1256 (2010) in imposing consecutive sentences.

*Id.* ¶ 1 (footnote omitted).

The Law Court held that neither the thirty-year sentence imposed for attempted murder, nor the fifty-year aggregate sentence, was constitutionally disproportionate under either Article I, section 9 of the Maine Constitution or the Eighth Amendment to the United States Constitution. *Id.* ¶¶ 16-18, 20, 22. The Law Court held that Petitioner was not denied his Sixth Amendment right to a jury trial when the court made factual findings, pursuant to 17-A M.R.S. § 1256(2), in deciding to impose consecutive sentences. *Id.* ¶¶ 23-25. Finally, the Law Court held that the

---

[2] The Law Court noted the distinction between a challenge to the legality of a sentence, which must be brought as a matter of right in a direct appeal, and a challenge to the propriety of a sentence, which must be brought by application for a discretionary appeal, pursuant to 15 M.R.S. §§ 2151-57 and M. R. App. P. 20. *State v. Ward*, 2011 ME 74, ¶ 15, ¶ 20 n.5, ¶ 22 n.6, 21 A.3d 1033.

sentencing court did not misapply 17-A. M.R.S. § 1256 when it imposed consecutive sentences. *Id.* ¶¶ 29-32.

In July 2011, Petitioner filed a pro se petition for state court post-conviction review, pursuant to 15 M.R.S. § 2129 and M. R. Crim. P. 68. (Docket Sheet.) The state court appointed counsel, who filed an amended petition. In the state court proceeding, Petitioner argued that trial counsel was constitutionally ineffective for (1) failing to file and pursue a motion to suppress the reenactment videotape, *see Ward*, 2011 ME 74, ¶ 11; (2) failing to conduct an adequate pretrial investigation; (3) failing to advise Petitioner correctly about his sentencing exposure; and (4) failing to provide guidance to Petitioner and his mother regarding statements they made at the sentencing hearing. (Post-conviction Decision and Judgment at 1.) Petitioner's pro se post-conviction petition also included a claim for ineffective assistance of counsel on appeal; the same attorney served as both trial and appellate counsel.

The state court conducted an evidentiary hearing on the petition in November 2012. In January 2013, the court denied the petition. In February 2013, Petitioner, through appointed counsel, filed a notice of discretionary appeal, and subsequently filed a memorandum of law requesting a certificate of probable cause in accordance with 15 M.R.S. §2131 and M. R. App. P. 19. *Ward v. State*, Wal-13-85. (Docket Sheet; Petitioner's Memorandum in Support of Certificate of Probable Cause.) The Law Court denied the certificate of probable cause. (Docket Sheet; Order Denying Certificate of Probable Cause.)

Petitioner signed the pending pro se federal habeas petition on January 13, 2014, which petition was filed on January 17, 2014.[3]

---

[3] Petitioner put the date "1-13-14" in the blank space indicating the date on which he placed the petition in the prison mailing system, and he put the date "1-14-13" in the blank space indicating the date on which he signed the petition. (Petition, ECF No. 1 at 16.) It is assumed that the date next to his signature is a typographical error, and that Petitioner both signed the petition and placed it in the prison mailing system on January 13, 2014.

5

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

### A. Procedurally Defaulted Claims

#### i. Standard of review.

A federal court cannot grant a habeas petition unless the applicant first exhausts all state court remedies or there is no available or effective state court remedy. 28 U.S.C. § 2254(b)(1). "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). Furthermore, the court may not grant relief on unexhausted claims unless the state has expressly waived the exhaustion requirement. 28 U.S.C. § 2254(b)(3). If a petitioner fails to exhaust state remedies, "and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Cone v. Bell*, 556 U.S. 449, 479 (2009) (Alito, J., concurring in part and dissenting in part).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

### ii. Petitioner's claims

#### a. The *Miranda* claims

As the first ground of his federal habeas petition, Petitioner claims that he did not receive a *Miranda* warning early in the interrogation process. (Petition at 5.) Petitioner also claims that he was not provided counsel when he asked for counsel prior to being questioned. (Petition at 7.) Petitioner further maintains that investigators knew that he was under the influence of drugs and alcohol when he was questioned, and thus argues that he should have had an attorney while he was being interrogated. (Reply at 2-3.) Petitioner asserts these claims as separate bases for challenging the state court judgment, i.e., he asserts them independent of his claims for ineffective assistance of counsel. (Petition at 5, 7.)

The State argues that Petitioner did not exhaust available state court remedies prior to asserting the first two grounds of his petition, i.e., his *Miranda* claim and his claim of failure to provide counsel. (Response at 4.) Petitioner did not raise either claim in state court. In fact, when Petitioner chose to plead guilty in an open plea, he foreclosed the opportunity to file a motion to suppress his statements. *See State v. Huntley*, 676 A.2d 501, 503 (Me. 1996) ("A conviction after a guilty plea involves no decision by the court regarding the defendant's criminal guilt and therefore provides no source of decisional error by the court regarding criminal guilt."). Petitioner's first two grounds, i.e., that he did not receive timely a *Miranda* warning and that an attorney was not provided when requested, are procedurally defaulted and may not be pursued in a habeas petition in federal court independent of his claims of ineffective assistance of counsel for failure to pursue a motion to suppress.

### b. Ineffective assistance regarding alleged prosecutorial misconduct

The State also argues that Petitioner's claim that his counsel was ineffective by failing to pursue an allegation of prosecutorial misconduct is procedurally defaulted. (Response at 5-6.)[4] Petitioner alleges in his federal habeas petition that the prosecution intentionally misstated, at the Rule 11 hearing and at sentencing, the number of times that Petitioner returned to the scene of the crime. (Petition at 9.) This claim appears to be related to the following passage in the Law Court's opinion on Petitioner's appeal:

> During the hearings when he pleaded guilty and was sentenced, [Petitioner] did not dispute the substance of what the State said he did, but did dispute that he left the scene and returned several times while doing so. The trial court found these timing disputes to be "fairly minor" issues.

*Ward*, 2011 ME 74, ¶ 7 n.2.

Petitioner raised the factual dispute at the Rule 11 hearing, counsel described it as "not material," and the court acknowledged that it was minor. (Rule 11 Tr. at 22-24.) At sentencing, the prosecution did not state that Petitioner returned to the crime scene multiple times, as Petitioner alleges the prosecution stated. (Sentencing Tr. at 18-19; Petition at 9.) A review of the record reveals that Petitioner did not raise this allegation previously and, therefore the issue is procedurally defaulted. In addition, Petitioner's claim fails on the merits because the record evidence does not support his contention that the prosecution committed misconduct. For that reason, Petitioner has not demonstrated either cause for the default, i.e., that counsel was deficient, or actual prejudice. *See Coleman*, 501 U.S. at 750; *Strickland v. Washington*, 466 U.S. 668 (1984).[5]

---

[4] The State argues that other claims may be procedurally defaulted as well, including that counsel gave improper advice about withdrawing the guilty plea, and that counsel told or threatened Petitioner that he was at risk of a life sentence. (Response at 5-6.) Those claims are addressed, *infra*, as claims that are not defaulted but fail on the merits.

[5] Under *Strickland v. Washington*, 466 U.S. 668 (1984), Petitioner must demonstrate (1) that "the attorney 'made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment',

8

### iii. Exhausted Claims

Federal habeas relief based on a state court judgment is not available unless the state court adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *see Hensley v. Roden*, --- F.3d ---, ---, 2014 WL 2791868, at *5, 2014 U.S. App. Lexis 11666, at *12-14 (1st Cir. June 20, 2014). When a petitioner challenges the state court's application of federal law, the federal law by which the state court decision is analyzed is determined by Supreme Court holdings at the time the state court decision was rendered. *Hensley*, 2014 WL 2791868, at *5, 2014 U.S. App. Lexis 11666, at *13.

To succeed on a claim of ineffective assistance of counsel, a state prisoner must demonstrate that the state court's "determination that his Sixth Amendment right was not abridged . . . was an unreasonable application of *Strickland v. Washington*, [466 U.S. 668 (1984)]." *Hensley*, 2014 WL 2791868, at *9, 2014 U.S. App. Lexis 11666, at *28. "An '*unreasonable* application of federal law is different from an *incorrect* application of federal law,' and a state court is afforded deference and latitude." *Id.*, 2014 WL 2791868, at *5, 2014 U.S. App. Lexis 11666, at *13-14 (quoting *Harrington v. Richter*, --- U.S. ---, ---, 131 S. Ct. 770, 785 (2011)) (quotation marks omitted).

---

and (2) 'prejudice to the defense,'" i.e., that it was "'reasonably likely' that the result of the criminal proceeding would have been different" without the attorney's errors. *Hensley v. Roden*, --- F.3d ---, ---, 2014 WL 2791868, at *9, 2014 U.S. App. Lexis 11666, at *28-29 (1st Cir. June 20, 2014) (quoting *Strickland*, 466 U.S. at 687, 696) (quotation marks omitted).

When a petitioner challenges the state court's determination of facts, "the fundamental principle of deference to those findings still applies." *Id.*, 2014 WL 2791868, at *5, 2014 U.S. App. Lexis 11666, at *14. The law provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. 2254(e)(1).

"When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, --- U.S. ---, ---, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. ——, ——, 131 S.Ct. 1388, 1403 (2011)) (some quotation marks omitted). Claims of factual error and legal error are both subject to a "highly deferential" standard of review. *Id.* at 15.

### a. Petitioner's claims of ineffective assistance

Petitioner asserts several claims of ineffective assistance of counsel in "Ground Three" of his section 2254 petition. The following ineffective assistance claims were fully adjudicated in state court and are not procedurally defaulted: (1) failure to pursue a motion to suppress; (2) failure to pursue an adequate pretrial investigation; (3) failure to advise correctly on the risk of consecutive sentences; and (4) failure to advise adequately on sentencing statements of Petitioner and his mother. Petitioner includes in his federal habeas petition two additional claims that the State argues are procedurally defaulted. (Petition at 8-9; Response at 5-6.) On the additional claims, Petitioner alleges: (1) that his counsel failed to advise about the withdrawal of a guilty plea after sentencing; and (2) that his counsel "threatened" that Petitioner would receive life imprisonment if he did not accept an open plea of guilty. (Petition at 8-9; Response at 5-6.)

10

### b. Failure to pursue a motion to suppress

Petitioner essentially argues that, in rejecting his request for relief based on his counsel's failure to prosecute a motion to suppress, the state court unreasonably applied clearly established federal law and made unreasonable factual determinations. (Petition at 8.)

Following the post-conviction evidentiary hearing, the Superior Court found that counsel's advice to Petitioner to enter a plea was reasonable and not constitutionally deficient. (Post-conviction Decision and Judgment at 2-3.) *See Hensley*, 2014 WL 2791868, at *9, 2014 U.S. App. Lexis 11666, at *26-28 (recognizing that whether counsel was deficient could be addressed as an issue of fact). The court noted that the State's agreement not to indict Petitioner on the charge of aggravated attempted murder was an important consideration. (Post-conviction Decision and Judgment at 2.) By pleading to the felony complaint, Petitioner avoided the risk of a life sentence for aggravated attempted murder. *See* 17-A M.R.S. § 152-A(2). (*Id.*) The court also noted that (1) entering an open plea on a felony complaint gave Petitioner the added advantage of demonstrating acceptance of responsibility; (2) even a successful motion to suppress would have been little help to Petitioner's defense, because the State had the victim's testimony as its principal proof; and (3) if Petitioner had chosen to testify at trial, the suppressed evidence could have been used for impeachment. (Post-conviction Decision and Judgment at 3.)[6] In other words, the court concluded that counsel's advice was not constitutionally deficient, even though it foreclosed the opportunity to pursue a suppression motion.

---

[6] The court also pointed out that Petitioner had never denied the criminal conduct, and so "as an ethical matter [counsel] could not have sponsored exculpatory testimony by [Petitioner] at trial." (Post-conviction Decision and Judgment at 3 n.1.)

11

In short, Petitioner has not demonstrated either an unreasonable determination of the facts or an unreasonable application of federal law. The court's factual finding that counsel was not constitutionally deficient was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," pursuant to section 2254(d)(2). In addition, he cannot demonstrate that the state court's application of *Strickland* was incorrect, nor that it was unreasonable.

### c. Failure to conduct an adequate pretrial investigation or pursue defenses

Petitioner asserts in his section 2254 petition that counsel failed "to aggressively pursue obvious lines of defense." (Petition at 8.) He does not specify elsewhere in his section 2254 petition which defenses he contends counsel failed to pursue. However, in the state court proceedings, Petitioner alleged that his counsel did not interview the victim; did not visit the two primary crime scenes; did not hire a private investigator to do those things; and did not arrange to watch the reenactment video with Petitioner. (Post-conviction Decision and Judgment at 4.)

The state court found that the record did not support an ineffective assistance claim based on the quality of the pretrial investigation because (1) the record lacks evidence that the victim was willing to be interviewed or otherwise "cooperate with the interests of the man who nearly killed her;" (2) the record contains no evidence that a visit to the crime scenes would have produced material beneficial information; and (3) contrary to Petitioner's contentions, counsel watched the videotape and offered to do so in the company of Petitioner, but Petitioner declined. (*Id.* at 3-4.)

Simply stated, Petitioner has not demonstrated that the state court's application of *Strickland* counsel was in any way unreasonable, nor has he provided any information upon which one could conclude that the state court's factual findings were unreasonable.

### d. Failure to advise correctly on the risk of consecutive sentences

Petitioner argues that his plea was not knowing and voluntary because counsel failed to advise him correctly regarding the risk of consecutive sentences. (Petition at 4.) Petitioner asserted this claim in the state court post-conviction proceeding.

The state court found that although counsel's advice regarding consecutive sentences was "largely incorrect,"[7] that advice alone did not establish a claim of ineffective assistance, and "the court need not and does not address the question of whether [counsel's] legal conclusion fell below that threshold, because even if it did, it did not affect the outcome of the case." (*Id.* at 5.) The court found that Petitioner would have been at great risk of an even longer sentence had he gone to trial, because (1) he likely would have been tried on the charge of aggravated attempted murder, with its attendant sentencing risks; (2) he could not assert that he had spared the victim from having to testify to the crime at trial, and thus he may not have been able to demonstrate acceptance of responsibility at sentencing; and (3) a trial would have emphasized the heinousness of the crimes, and this too would have put him at a greater disadvantage at sentencing. (*Id.*) The court found that Petitioner's "only option was to contain the charges as [counsel] did for him, and then to

---

[7] The court found that counsel told Petitioner that counsel:

> did not expect that any one of the three sentences could be consecutive to another, although he also told [Petitioner] that he could not guarantee that structural interrelationship among the sentences. [Counsel's] analysis of 17-A M.R.S. § 1253 and other applicable sentencing laws led him to conclude that consecutive sentences were probably not authorized or lawful under the circumstances of the case, and he advised [Petitioner] based on this analysis. In fact, the court did impose sentences on the charges of attempted murder and kidnapping that were concurrent with each other, but consecutive to the sentence imposed on the robbery charge. On appeal, the Law Court affirmed the legality of those sentences. *See State v. Ward*, 2011 ME 74, 21 A.3d 1033. This demonstrates that [counsel's] analysis was not fully correct; although in his consultations with [Petitioner] he did not rule out the possibility of consecutive sentences, he expressed his opinion that the court probably could not order that any of the sentences could be served in this way.

(Post-conviction Decision and Judgment at 4.)

13

present the best case possible at the sentencing hearing." (*Id.*) According to the state court, counsel's incorrect advice on consecutive sentencing had no bearing on this analysis. (*Id.*)[8]

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384 (2012) (quoting *Strickland*, 466 U.S. at 694).

A review of the record reveals that Petitioner simply cannot demonstrate that he was prejudiced by counsel's advice, even if counsel's understanding of the law was incorrect. Had Petitioner not entered the guilty pleas as recommended by counsel, Petitioner would have been exposed to a possible life sentence on an aggravated attempted murder charge. Given the facts of the case, a conviction on an aggravated attempted murder charge and a sentence at least as long as the sentence Petitioner is serving appeared likely. Petitioner, therefore, cannot demonstrate prejudice. Accordingly, he cannot prove that the state court's application of *Strickland* was incorrect, let alone unreasonable.

### e. Failure to advise adequately on sentencing statements

While Petitioner's section 2254 filing lacks clarity as to whether he intended to challenge counsel's advice regarding the sentencing statements submitted by Petitioner and his mother, his claim that counsel failed to pursue certain defense strategies could be interpreted to include the allegation that counsel failed to advise him adequately regarding those statements. (Petition at 8.) *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (noting that pro se prisoner complaints are held to "'less

---

[8] Petitioner argued in support of his discretionary appeal that the advice constituted deficient performance, but he did not address the court's finding of a lack of prejudice. (Petitioner's Memorandum in Support of Certificate of Probable Cause at 5-6.)

stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

The post-conviction court found that Petitioner's allocution focused mostly on the effect that his incarceration would have on him, his girlfriend, and members of his family, rather than on the effect of the crime on the victim. (Post-conviction Decision and Judgment at 6.) The court found that but for counsel's advice, Petitioner would not have acknowledged the impact of the crime on the victim, nor expressed any remorse. The court understandably found that counsel was not deficient in his advice to Petitioner. (*Id.*)

Petitioner also maintains that his counsel should have advised Petitioner's mother not to include in her statement to the sentencing court "that it is your wish that [Petitioner] suffer. Well, he is," followed by a description of hardships that Petitioner had experienced in jail. (*Id.* at 6-7.) The state court found that counsel had considered the mother's statement, evaluated its impact, and made the judgment call that this statement signified family support and might be treated as a mitigating factor at sentencing. (*Id.* at 7.) Furthermore, the court found that the mother's statement was "a very small part of the record" at sentencing, and it had minimal impact and no specific effect on the sentences ultimately imposed by the court. (*Id.*) The state court thus found that Petitioner was not prejudiced by the mother's statement. (*Id.*)

Petitioner cannot demonstrate that the state court's application of *Strickland* was incorrect or unreasonable. To the contrary, on this record, the state court's factual findings and legal analysis are sound.

### f. Additional claims in federal habeas petition

Petitioner additionally argues in his federal habeas petition (1) that counsel failed to advise him that he could withdraw his guilty plea after sentencing, and (2) that counsel "threatened" that

15

Petitioner would receive life imprisonment if he did not accept an open plea of guilty. (Petition at 8-9.) The State contends that "to the extent that" those arguments are different from those advanced in counsel's amended petition, the claims are procedurally defaulted. (Response at 5-6.) Petitioner did claim in the state post-conviction proceeding that counsel erred in advising Petitioner to enter an open plea. (Amended Petition at 1-2; Memorandum in Support of Certificate of Probable Cause at 1.) Petitioner testified at the post-conviction hearing that counsel failed to advise him about withdrawing his plea, and he asserted that his counsel took a "single minded 'seek a plea' approach." (Post-conviction Tr. at 36; Post-conviction Closing Argument and Memorandum at 4.) In support of his request for a discretionary appeal, Petitioner argued that counsel pursued the open plea as the only option. (Memorandum in Support of Certificate of Probable Cause at 1.) Petitioner's claims, therefore, are not procedurally defaulted.

Petitioner's arguments, however, fail on their merits. First, Petitioner's contention that his counsel's performance was substandard because he failed to advise Petitioner that he could withdraw his plea after sentencing cannot support an ineffective assistance of counsel claim because Petitioner could not withdraw his plea after sentencing. *See* M. R. Crim. P. 32(d) ("A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed."); *State v. Bilynsky*, 2008 ME 33, 942 A.2d 1234 (holding that M. R. Crim. P. 32(d) does not violate the "open courts" provision or the due process clause of the Maine Constitution).

Similarly, Petitioner's allegation that counsel told him in a threatening way that he may be subject to life imprisonment if he did not plead guilty to the felony complaint cannot serve as the basis of an ineffective assistance claim. The state court found that Petitioner would have risked an indictment on a charge of aggravated attempted murder if he had not pled guilty to the felony complaint. (Post-conviction Decision and Judgment at 3.) The "threat" of Petitioner's counsel

was an accurate assessment of Petitioner's situation. Accordingly, even if Petitioner proved that counsel forcefully told him that he risked life imprisonment if he were convicted of aggravated attempted murder, because the advice was accurate and sound, Petitioner could not prevail on a claim of ineffective assistance or counsel. Petitioner thus cannot demonstrate that the state court's application of *Strickland* was incorrect or unreasonable.

    **iv.    Claims Made in the Direct Appeal**

Petitioner also reasserts in Ground Four of his petition all of the arguments that he made in his direct appeal. More particularly, Petitioner argues (1) that his sentence violates the Eighth Amendment prohibition on cruel and unusual punishment, (2) that the sentence denied him his Sixth Amendment right to a jury trial, and (3) that the trial court imposed an illegal sentence by misapplying 17-A M.R.S. § 1256. As to Petitioner's constitutional claims, the Law Court's decision must be upheld unless it (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). In this case, because Petitioner does not allege a factual error, Petitioner's constitutional arguments must be analyzed as legal challenges.

    **a.  Claim of Eighth Amendment violation**

As the Law Court explained, "'[t]he Eighth Amendment contains a narrow proportionality principle, that does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime.'" *Ward*, 2011 ME 74 ¶ 19 (quoting *Graham v. Florida*, 560 U.S. 48, 59-60 (2010)) (quotation marks omitted). The Law Court further noted that "it is 'the rare case' that can support an inference of gross disproportionality . . . ." *Id.* (quoting *Graham*, 560 U.S. at 60). The Law Court concluded that the

17

facts of the case "amply support[ed] the Superior Court's conclusion that 'this was just an absolutely monstrous crime.'" *Id.* ¶ 20. The Law Court's application of the Eighth Amendment standard to Petitioner's sentence was neither contrary to, nor an unreasonable application of, the Supreme Court's holding in *Graham*.[9] Petitioner's Eighth Amendment argument thus fails.

### b. Claim of Sixth Amendment violation

On appeal to the Law Court, Petitioner argued that "because the maximum punishment for any of his offenses singly was thirty years, and he received an aggregate sentence of fifty years when consecutive sentences were imposed, the facts necessary to justify the consecutive sentences must be found by a jury." *Ward*, 2011 ME 74 ¶ 23. In rejecting Petitioner's argument, the Law Court noted the Supreme Court's holding in *Oregon v. Ice*, 555 U.S. 160, 164 (2009), that the Sixth Amendment did not "'constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences.'" *Ward*, 2011 ME 74 ¶ 25 (quoting *Ice*, 555 U.S. at 164). The Law Court, therefore, concluded that the imposition of the consecutive sentences did not violate Petitioner's right to a trial by jury. *Id.* ¶ 25.[10] In short, the Law Court's application of the Sixth Amendment standard to Petitioner's sentence was neither contrary to, nor an unreasonable application of, the Supreme Court's holding in *Ice*. Petitioner thus cannot prevail on his Sixth Amendment claim.

---

[9] The Law Court also held that the sentence did not violate the corresponding provision of the Maine Constitution. *Ward*, 2011 ME 74 at ¶¶ 16-18, 20, 22 (citing Me. Const. Art. I, § 9; *State v. Gilman*, 2010 ME 35, ¶¶ 14 n.6, 23-24, 993 A.2d 14).

[10] The Law Court also held that the sentence did not violate the corresponding provision of the Maine Constitution. *Ward*, 2011 ME 74 at ¶¶ 23-25 & n. 8 (citing *State v. Keene*, 2007 ME 84, ¶ 1, 927 A.2d 398).

18

### c. Claim of misapplication of state law

In Petitioner's reply in support of his motion, he argues that the court erred in imposing a consecutive sentence, pursuant to 17-A M.R.S. §1256(2)(A), (D), because his intent was to commit all three crimes as a single crime spree. He wrote:

> My motivations were/are clear. I meticulously planned at least 2 days in advance how I was in fact going to Kidnap, Rob and Murder the victim. To facilitate a kidnap robbery and murder, this was exactly what I planned to do and commenced to execute. These crimes and my reenactment and the interrogation back my meticulous planning to commit all three crimes as a single crime and crime spree. Here there was no substantial change in the nature of my criminal objective from beginning to Kidnap rob and Murder a victim.

(Reply at 6.) He requests resentencing with concurrent rather than consecutive sentences. (Reply at 6-7.) The Law Court's decision on the application of 17-A M.R.S. § 1256 is an issue of state law and as such is not cognizable in a federal habeas review. *See Lewis v. Jeffers*, 497 U.S. 764, 783 (1990). Therefore, to the extent Petitioner argues that the Law Court misapplied 17-A M.R.S. § 1256, the Court need not consider that argument.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases, and the recommendation is (1) that the Court dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2254, and (2) that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served

with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of July, 2014.